## MARX *et al. v.* THE BRITANNIA.[1]

*(District Court, S. D. New York.   April 28, 1888.)*

SHIPPING—CARRIAGE OF GOODS—NEGLIGENT STOWAGE—LIMITING LIABILITY.
    Two drums of glycerine in a consignment of 102 on board the steam-ship Britannia, were cut by chafing together during the voyage, whereby the glycerine leaked out.   It appeared that the dunnage wood which was placed between all the drums of the consignment, had fallen out during the voyage from between these two drums only.   The voyage had been a rough one.   The damage was within the exceptions of the bill of lading.   *Held,* that the only fair inference was that the wood between these drums was not secured in the usual and proper manner, and that the loss was therefore the result of negligence in stowage, for which the steam-ship was liable, notwithstanding the exceptions of the bill of lading.

In Admiralty.   Libel for damages.
*Geo. A. Black,* for libelants.
*R. D. Benedict,* for claimant.

BROWN, J.   In December, 1885, the Britannia delivered in New York 102 drums of glycerine, consigned from Marseilles on the libelants' account.   Two of the drums were so injured on the passage that the glycerine was lost to the value of $175; the rest of the drums were uninjured. The bill of lading excepted loss from "leakage" or "pressure of other cargo."   Drums of glycerine are peculiar in construction, and require to be specially stowed with boards or planks between the drums.   The testimony of the mate, given two months after the arrival of the steam-ship, shows that these two drums were in the lower hold, the one being on the top of the other; and that pieces of wood, which in the stowing had been placed between them to keep them properly secured and apart, had dropped out, the ship having met rough weather on the passage.   The testimony of the master, taken two years afterwards, as respects the disarrangement of the wood, is, I think, less reliable.   The mate states positively that the wood fastenings for these two drums were all that had got out of place, and there is proof of general good stowage.   As the loss arose from "leakage," which is one of the exceptions of the bill of lading, the burden of proof, in order to charge the ship, is upon the libelants to show that there was some negligence on the part of the vessel that produced the leakage.   The mate's testimony shows the cause to have been the dropping out of the wood that separated these two drums, which allowed the drums to pound or chafe each other.   Had there been a general disarrangement of the wood, or had it dropped away between other drums, the proof of such facts, together with the proof of general good stowage, might have warranted the inference that the disarrangement and dropping out of the wood was caused solely by the severe weather, a peril of the sea, which is also within the exceptions of the bill of lading; and not by any defect in securing the wood of these two packages.   But the

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

mate's testimony that on arrival the wood had not dropped away from any others except the two injured, will not permit the inference that it arose from rough weather alone; since in that case the wood between other drums would have been similarly affected. The only fair inference of fact is that the wood between these two drums was not secured in the usual and proper manner, and that negligence in this respect was the cause of the wood's dropping out, and thereby of the leakage which caused the loss. *The Burgundia,* 29 Fed. Rep. 607; *The Surrey,* Id. 608, and note. In *The Polynesia,* 30 Fed. Rep. 210, there were no special circumstances indicating negligence on the part of the ship.

The libelant is therefore entitled to a decree for the amount claimed, with interest and costs.