## THE ORCADIAN.

(District Court, E. D. Pennsylvania. July 21, 1902.)

### No. 16.

1. SHIPPING—INJURY TO CARGO—IMPROPER STOWAGE.

Where barrels of cod oil were stowed in a compartment of the hold of a vessel partly filled with wool, another compartment being available, and the barrels were laid on their bilges in a single tier upon a wooden bedding, separated from each other by hanging pieces of wood, no attempt being made to secure them, and during the voyage some of the barrels were broken open and the wool saturated, the steamship was answerable for such damage on the ground of negligent stowage.

2. SAME—PERIL OF THE SEA.

Where weather encountered on a voyage was not more severe than was to be expected at that season of the year and in the locality traversed, peril of the sea is no defense to an action for injuries to goods from improper stowage.

3. SAME—BILLS OF LADING—LIMITATION OF LIABILITY.

A shipowner is not relieved from liability for injury to goods caused by improper stowage by a limitation of liability in the bill of lading, declaring that the vessel shall not be answerable for damage caused by any act or omission, negligence, malfeasance, default, or error of judgment of the stevedores or other persons in the service of the shipowners; improper stowage, whether due to carelessness or a mistake in judgment on the part of the stevedores, being a fault in improperly loading the cargo for which the vessel is liable.

4. SAME—LIABILITY FOR NEGLIGENCE.

A provision in a bill of lading relieving a shipowner from liability for the negligence of stevedores and persons in his employ is ineffective, and will not be enforced in the federal court of admiralty.

---

¶ 3. Limitation of owner's liability, see note to The Longfellow, 45 O. O. A. 387.

Francis S. Laws and John F. Lewis, for libelant.
Henry R. Edmunds, for respondent.

J. B. McPHERSON, District Judge. This libel is brought by James Lees & Sons Co., to recover damages to cargo, caused by alleged improper stowage, and is based upon the following facts: In November, 1899, the Allan Line received upon its steamship Orcadian at Glasgow 358 bales of wool, consigned to the libelant's agents at the port of Philadelphia. The wool was stowed in No. 1 hold, and in Nos. 3 and 4, between-decks; 67 bales being stowed in the forward part of No. 3. The steamship touched at St. Johns, Newfoundland, and there, on December 7th, took on board 200 or more barrels of cod oil, which were stowed in the after part of No. 3, between-decks. The barrels were laid upon their bilges in a single tier, being laid upon a wooden bedding and separated from each other by hanging pieces of wood; the whole being then jammed so as to make a presumably compact and practically immovable mass. No other cargo was on top of the barrels, and no attempt was made to secure them by tomming. The oil was destined for Halifax, and reached that port after a voyage of two days, arriving on the evening of December 10th. During these days, the ship had encountered severe weather, the wind blowing a moderate gale most of the time, and the waves running high with cross seas; but no damage was done to the vessel, and neither the wind nor the sea was of unexpected or unusual violence, considering the locality and the season of the year. Moreover, the ship was light, and this circumstance caused her to roll and pitch more than would otherwise have been the case. Upon arrival at Halifax, it was found that two, at least,—the log says four, —of the barrels had gone adrift, their heads had been broken in, the oil had escaped, and, either by actual contact or by impregnating the wool with its pungent and disagreeable odor, had injured the bales in No. 3, thus doing a part of the damage complained of. Many of the remaining bales are also said to have been injured by absorbing the substance or the odor of the oil, but upon this point the testimony is at present unsatisfactory. Considering the fact that the rest of the wool was in other cargo compartments, apparently separated by tight partitions, and the meagerness of the testimony to show that it was in truth affected while upon the ship; and considering, also, that the entire shipment was stored together in a bonded warehouse after its arrival at the port of Philadelphia,—I cannot now find as a fact that any other bales than those in No. 3, between-decks, were injured. As the case must go to a commissioner, however, to determine the extent of the damage, I shall leave this point open for his consideration upon the testimony already taken, and upon such other evidence on this subject as the parties may see fit to offer.

As already intimated, I think the steamship is answerable for negligent stowage. There is a good deal of force in the libelant's contention that, as No. 2 hold was nearly emptied of its cargo at St. Johns, the oil should have been stowed in that compartment. It appears that a comparatively small amount of cargo that might have

been affected by the oil still remained in No. 2, but this could have been removed without difficulty to No. 3, between-decks, giving up No. 2 to certain pig iron stones and to the oil. The weight of the testimony would seem to support the conclusion that, under ordinary cirstances, the hold is the proper place for such an article as cod oil; but, however this may be, the vessel's negligence sufficiently appears, in my opinion, in the manner in which the oil was stowed. The barrels that went adrift were undoubtedly insecurely fastened, and the explanation offered, that they broke loose by reason of a peril of the seas, has not been established. The ship's officers themselves do not assert that there was anything unexpected or unusual in the December weather that was encountered between St. Johns and Halifax, and it would be a waste of time to do more than repeat that a peril of the seas—to use the well-known language of The Reeside, Fed. Cas. No. 11,657—includes "only such losses as are of an extraordinary nature, or arise from some overwhelming power which cannot be guarded against by the ordinary exertions of human skill and prudence." The ship was known to be light, the north Atlantic is known to be visited by frequent severe weather in the month of December, the fact that wool absorbs the substance and the odor of fish oil is also notorious, and the ship was therefore bound to take due precautions in view of such contingencies. There is some conflict in the expert testimony concerning the proper method of stowage; but I think the weight of the evidence justifies the finding that what was done was not only insufficient, but should have been seen to be insufficient. The barrels should have had a temporary bulkhead in front of the forward row, and, perhaps especially, should have been tommed to keep individual barrels from jumping out of place and being broken in.

I think it is clear that if this had been done the injury would not have happened, and the respondent does not seem to deny the truth of this statement. At all events, its truth is provisionally admitted, and the remaining defense is then put forward, namely, a clause in the bill of lading that the vessel is not to be responsible for damage caused by any "act or omission, negligence, malfeasance, default, or error in judgment of the * * * stevedores * * * or other persons in the service of the shipowners." The stevedores that stowed the oil at St. Johns were in the service of the shipowners, and it is argued that the method of stowage employed, even if it be conceded to have been insufficient, was at the worst due to an error of judgment for which the respondent is not liable. I am not disposed to take this view. To my mind, improper stowage, whether due to carelessness or to a mistake in judgment on the part of the stevedores employed by the ship, is still a fault in properly loading the cargo, of which the vessel must bear the consequences. To hold otherwise would enable the ship in many instances to escape all liability for improper stowage, and to compel cargo owners to take the risk of ignorance or want of skill on the part of the ship's own agents. Besides, in any event, "error of judgment" cannot be permitted to have so extensive a meaning as to make it equivalent to "negligence"; and, upon the facts now being considered, the respondent's construc-

tion of the phrase would, I think, result in such equivalence. If this result would follow, the foregoing provision of the bill of lading would be ineffective in a federal court of admiralty.

A decree may be entered in favor of the libelant.