## THE TRIGNAC.

### (District Court, E. D. New York. April 3, 1909.)

SHIPPING (§ 141*)—CARRIAGE OF GOODS—LIMITATION OF LIABILITY—IMPROPER STOWAGE.

   During the voyage of a steamship across the Atlantic burlap bags containing walnuts, stowed with other cargo in the hold, which was without partitions, were torn, apparently by wooden cases containing other cargo which were thrown around by the pitching of the vessel, and the walnuts were lost or damaged. The voyage was rough, but no more so than should reasonably have been anticipated at the season. *Held*, that the loss was not due to perils of the sea, within the exceptions in the bills of lading, but to negligent stowage, for which the vessel was liable; due care requiring that the bags should have been kept separate from the other cargo which was likely to injure them, by means of partitions or otherwise.

   [Ed. Note.—For other cases, see Shipping, Cent. Dig. § 498; Dec. Dig. § 141.*

   Loss by perils of the sea, see notes to The Dunbritton, 19 C. C. A. 465; Southerland-Innes Co. v. Thynas, 64 C. C. A. 118.]

In Admiralty. Suit for loss of cargo.

Ritch, Woodford, Bovee & Butcher, for libelant.

Wing, Putnam & Burlingham, for claimant.

CHATFIELD, District Judge. The libelant was the owner of certain bags of walnuts, imported upon the steamer Trignac, from France, in the year 1906. The Trignac sailed from Bordeaux upon the 14th of November, and arrived in New York on the 6th of December. The Trignac is owned in France, and carried general cargo, including other walnuts, and goods in wooden cases. The walnuts were packed in burlap bags, and upon arrival at the port of New York the contents of 24 entire bags, and part of the contents of 56 damaged bags, were not turned over to the libelant, to make up the quantity called for by the bill of lading. The bill of lading contained the usual terms, including exemption from—

"loss or damage resulting from defects in the condition of the packages, * * * breakage, stowage, or contact with other merchandise."

The bill of lading also contains the statement:

"Weight, contents and value unknown, and not responsible for leakage, breakage or rust."

The testimony shows that on this trip the vessel encountered heavy weather, the wind sometimes blowing at a rate classified as a gale, and that the ship rolled a great deal. The Trignac was peculiar, in that, while not a large vessel, being of but 1,047 tons, she had an extremely large undivided cargo space in proportion to her size. The cargo space was not divided as is usual in such vessels, with what is known as "between-decks," and in consequence of this peculiarity the entire cargo was piled upon the planking or floor of the hold of the vessel (as closely as possible throughout the entire cargo space) up to the main deck.

The testimony shows that a strongback, or brace of heavy angle iron, passed across the ship near each hatchway, some five or six feet below the level of the main deck. A stanchion ran from this angle iron to the frame of the hatch, and the bar was thus used to stiffen the frame of the vessel. The cargo necessarily had to be stowed around these iron beams, and dunnage was used in the form of planks, some nine inches wide, six or seven feet long, and a little over an inch thick, to prevent the cargo from coming in contact with these iron bars, and also with the sides of the vessel. The testimony shows that, when the vessel arrived at New York, the cargo which had been stowed away well up into the hatchway had settled from four to six feet; but the testimony of the witnesses, as to how much the general level of the cargo under the decks, away from the hatch, had changed, was indefinite, and furnished no basis for a satisfactory conclusion. There was a conflict of testimony as to whether the bags of nuts had been injured, in the neighborhood of these iron bars, in greater proportion than in other parts of the cargo space, and the libelant has attempted to show that the stowing of the cargo was negligently performed, in that the method of packing the bags of nuts, with loose

dunnage around the iron bars and frames of the vessel, did not show the exercise of reasonable caution on the part of the owners of the vessel or their agents.

The claimant has offered evidence to show that various portions of the cargo, especially the wooden cases of goods, shifted and worked around, under the influence of the rough weather which the vessel encountered, and that the burlap bags containing the nuts were torn and broken by these cases, and by the pressure exerted upon the various portions of the cargo. The claimant has also offered testimony to show that the passage was so rough, and the weather so severe, that the vessel would be excused, under the terms of the charter, from damage resulting because of such weather; but the evidence does not show any wreck or disaster, or weather conditions which it would seem should not be reasonably anticipated by those who were stowing the vessel for a trip across the Atlantic. On the contrary, the trip was made under conditions as to which both those responsible for the stowage of the cargo, and those responsible for the strength of the packages in which the cargo was shipped, must be held to have reasonably known the needs of the situation. There is some evidence on the part of the claimant to the effect that the bags containing the walnuts were insufficient; but it is thought that the evidence shows these bags to have been of the ordinary kind, and in reasonably good condition, and no loss would seem to be attributable to either of these causes.

The libelant does not satisfactorily meet the burden of proof with reference to his allegations that the angle iron or beam penetrating the cargo space was the cause of any extensive injury. On the contrary, the weight of evidence would seem to indicate that the bags of walnuts were torn in different parts of the cargo, and in such ways that something else must have been the first cause of the injuries. The proof likewise is not sufficient to indicate that the mere use of loose dunnage around the iron bars or frames of the vessel was the cause of conditions resulting in the damage shown. As was intimated at the close of the trial, the whole question of the liability of the vessel seems to depend upon the general proposition arising from the terms of the bill of lading, and the responsibility on the part of the owners and officers of the Trignac for carrying, in a ship of her shape and construction, general cargo in a loose condition, without compartments or decks to divide the different classes of packages.. The damage would seem to have been done through the gradual creation of space, as the bags in which the nuts were confined became torn from pressure or wear. The cargo thus settled around the iron beams above referred to, and all through the hold, while at the same time the wooden cases were given opportunity to be thrown about under the pitching of the vessel.

The vessel must either be held responsible on the ground that those stowing the cargo should have reasonably anticipated that the burlap bags containing nuts would not stand the particular pressure and wear to which they would be subjected, or else the libel must be dismissed upon the ground that no injury has been satisfactorily proven,

which could have reasonably been foreseen from the formation·of the cargo space and the method of stowing. The libelant has not satisfactorily proven the particular portion of the dunnage which became disarranged, nor the particular object which first destroyed or tore any of the bags. But the libelant has shown, and the testimony of the ship's officers, and of Mr. Gillett, manager of the Associated Operating Company, who was present several hours each day while the Trignac was being unloaded, does show, that the injuries resulted from the contact or wear which the bags received, under the influence of weather not unusually rough. Mr. Gillett further testified, in answer to a more or less hypothetical question, that a settling of four feet in the cargo could be assigned by him to no cause other than improper stowage; and it would seem that, inasmuch as the injuries were not within the exceptions of the bill of lading, and should reasonably have been anticipated from the character of the place in which the cargo was stowed, the vessel must be held liable.

Three cases have been cited which are closely applicable to the question.

In Bethel v. Mellor & Rittenhouse Co. (D. C.) 131 Fed. 129, the provisions of section 1 of the Harter act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]) are held to apply, and that exceptions in the bills of lading, of a similar character to those in the case at bar, could not protect the ship from the responsibility for negligent loading and stowage.

In the case of The Orcadian (D. C.) 116 Fed. 930, the vessel was held answerable for negligent stowage, "whether due to carelessness, or a mistake in judgment on the part of the stevedores employed by the ship." In that action some barrels of oil were stowed next to bales of wool; the barrels being separated by pieces of wood, and the entire cargo of barrels being wedged so as to be presumably compact. Some such weather as that in the present case, at about the same time of the year, was experienced. The vessel was not injured, but some of the barrels went adrift, were broken, and the oil damaged the wool. The case was decided upon the ground that a temporary bulkhead, or some other means of protecting the barrels from being thrown around, should have been employed. The similarity between the responsibility fixed by the court in that case and the responsibility resting upon the owners of the Trignac is very great.

Again, in the case of Marx v. The Britannia (D. C.) 34 Fed. 906, where the evidence showed that under the influence of rough weather the wood dunnage between two drums of glycerine had dropped out, thus allowing the drums to pound or chafe, Judge Brown said that if there had been a general disarrangement of the wood, or had it dropped away between other drums, the inference might have been warranted that the trouble was caused by severe weather (that is, a peril of the sea); but, where it occurred to but part of the cargo, the only fair inference is that the wood between these two drums was not secured in the usual and proper manner, and that negligence in this respect was the cause of the wood's dropping out, and thereby of the leakage which caused the loss—citing The Burgundia (C. C.) 29 Fed. 607, and The Surrey (C. C.) 29 Fed. 608.

In the present instance the damage was confined to the bags of nuts, and there was no shifting of the cargo as a whole, nor any disarrangement, except in so far as the comparatively rough weather caused pressure and hard treatment to the part of the cargo which was contained in the burlap bags. As has been said, if bags of nuts were packed around the hatchways and angle irons, with loose dunnage, in a space where any displacement would cause pressure and shifting of adjacent cargo, injury would seem to be reasonably expected, and must be held to be negligence, which was the cause of the damage to the walnuts with respect to which this action is brought.

The libelant may have a decree therefor.