Morris, D. J.
The respondents in this case chartered the schooner Martha Welsh for a voyage from Steam’s Works, Guilford, Connecticut, to Baltimore, Maryland, and they engaged to provide and furnish to the vessel at Guilford 200 tons of dried fish scrap, in bulk — cargo to be put in vessel’s hold by shippers, but trimmed, stowed and discharged by vessel’s dispatch in loading and discharging. The charter-party contains this stipulation: “Charterers guaranty ten feet of water at wharf, at Guilford, and agree to lighter balance of cargo at their expense.” I am satisfied from the testimony that before the master of the vessel got to the wharf at Guilford he was warned that there was not ten feet of water there, and that shortly after getting to Stearns’ wharf he well knew, both from information given him by others and from his own soundings, that hardly eight feet could be expected at high tide. Notwithstanding that knowledge, he allowed the parties at the wharf to continue putting cargo on board until the ves *784 sel was hard aground, and could only be gotten off by unloading some portion of it. This unloading occasioned considerable delay, which is one of the items of damage claimed by the libellant.
The other items of damage are alleged injuries to the vessel from the grounding and delay during the time required for the consequent repairs. The charterers were not themselves putting the cargo on board, but the manufacturers, from whom the charterers had purchased it; and, notwithstanding the misstatement in the charter-party as to the depth of water, I think it was the duty of the master of the vessel to exercise ordinary skill and judgment for the protection of all concerned. Because he did not find at the wharf the 10 feet of water guarantied in the charter party, he was not justified in allowing his vessel to be loaded down to an extent which, in view of the certain knowledge he had acquired, if he had exercised ordinary judgment, he should have known would entail unnecessary delay and damage.
He was aboard all the time and cognizant of all that was being done. It was Ms business to know when Ms vessel was loaded to a prudent depth, and then “it was Ms duty to go into deeper water and require the balance of the cargo to be lightered; and he had a right to be paid damages for the delay arising from the lightering rendered necessary by the want of 10 feet of water at the wharf. If the parties had refused to put the cargo aboard in lighters, he could have sailed without it and recovered full freight.
The master appears from his own testimony to have mistaken his duty, and to have supposed that he could put upon the persons engaged in putting the cargo on board the responsibility of determining when they had put in the vessel as much cargo as it was prudent to take on at the wharf. In this he was in error. At that time he had been several days at the wharf and knew quite as much about the depth of water as any one, his own soundings having shown him that there was only between six and seven feet at high tide; and as to the capacity and draft of his own vessel he should have known more than any one else, and it was for Mm to *785 determine and decide when the loading at the wharf should stop.
It appears that 11 days elapsed from the time the vessel got hard aground at the wharf until she finally sailed for Baltimore. Six days of this time was consumed in unloading part of the cargo to lighten the vessel and get her out of the difficulty she should never have been gotten into, and the remaining five days were consumed in putting aboard the balance of the cargo from lighters after the vessel was anchored in deeper water. This last delay of five days would not have been necessary had there been 10 feet of water at the wharf, and demurrage at $25 a day for these five days is to be paid by the respondents.
The libellant is entitled to a decree for the unpaid freight, and $125 demurrage.