## BETHEL v. MELLOR & RITTENHOUSE CO.

(District Court, E. D. Pennsylvania. May 27, 1904.)

### No. 34.

1. SHIPPING—DAMAGE TO CARGO—LIABILITY FOR IMPROPER STOWAGE.

A provision of a charter party that the master shall employ the charterers' stevedores at ports of loading, and discharge and pay them stated compensation, "the stevedores to be wholly under the direction and control of the master," does not affect the liability of the ship or owners for improper stowage.

2. SHIPPING—LIMITATION BY BILL OF LADING—HARTER ACT.

A cargo of licorice root was damaged in shipment, because, in loading, the stevedores, who were under the direction and control of the master, broke open a large number of the bales and stored the root in unusual places, where it received injury. Held, that the ship was liable for the damage, and could not avoid such liability by a notation, placed on the bill of lading at the insistence of the master, stating that the ship was not responsible for broken or cut bales; such notation being void under section 1 of the Harter act (Act Feb. 13, 1893, 27 Stat. 445, c. 105 [U. S. Comp. St. 1901, p. 2946]), which makes it unlawful to insert in a bill of lading any clause relieving the ship from liability for damages "arising from negligence, fault, or failure in proper loading stowage," etc.

In Admiralty. Action to recover freight.

Convers & Kirlin and Charles R. Hickox, for libelant.

Horace L. Cheyney, for respondent.

HOLLAND, District Judge. This suit is for a balance of freight, amounting to $838.21, claimed by the libelant to be due on a cargo of licorice root, shipped from Alexandretta to Philadelphia on the ship Cilurnum, under a charter party. When the cargo arrived here on the 16th day of April, 1901, it was found that more than three times the usual number of bales had been broken, and the root stowed away in every available space in the ship, even between the battens. The respondent avers:

"That the said cutting and breaking was due to a want of proper care, or rough handling in stowage, and to the lack of proper care. That by reason of the cutting and breaking of said bales said cargo was damaged to the amount of five hundred and twenty-five and fifty-two hundredths dollars ($525.52), which the respondent now claims to recover by way of set-off against the freight due said steamship."

This averment is sustained by the evidence, except as to the amount of damage. The libelant seeks to avoid this liability because (1) the loading was under the direction of the shippers at Alexandretta; (2) the loading was done in accordance with the custom at that port; (3) the stevedores were appointed by the charterers; and (4) there was found on the bills of lading a written notation by the consignee that the libelant is "not responsible for broken or cut bales."

The testimony of the master as to who was in charge of the licorice root as it was brought alongside of his ship on lighters at the port of lading is entirely too vague to show whether or not there was a representative of the shippers or the charterers directing the loading. Some person was giving orders, but his identity is not disclosed, nor

131 F.—9

is his name given, and the evidence of the method of loading, being in accordance with the custom at that port, is still more vague, and not sufficient to establish that fact.   The charter party provides that:

"The master shall employ charterers' stevedores at loading ports, paying one franc per ton on the guarantied dead weight capacity, * * * and to employ charterers' stevedores at discharging ports, paying usual charge, not exceeding forty cents per ton discharged.   The stevedores to be wholly under the direction and control of the master."

The master testified that he objected a number of times to the bales being broken, but that the stevedores followed his direction for a while, and then would continue in their own way to break bales and stow licorice root as found in the vessel when she arrived at Philadelphia.   It was his duty to see that the cargo was loaded properly, and prevent the stevedores from breaking the bales and stowing it in unusual places in the ship, which resulted in this damage.

The provisions in a charter party that charterers' stevedores be employed by the master and paid by him does not affect the liability of the ship, or the owners, for improper stowage, since the stevedores in such case are held to be in the employ of the captain, and under his direction and control as the representative of the owners.   Richardson v. Winsor, 3 Cliff. 405, Fed. Cas. No. 11,795; The T. A. Goddard (D. C.) 12 Fed. 184.   The ship is liable for damage resulting from improper stowage and for the breaking of these bales and stowing the licorice root in unusual places in the ship, no matter by whom the stevedores are employed, or whosoever may have been liable personally, especially when he permitted this to be done by the stevedores wholly under his own direction and control.   The Boskenna Bay (D. C.) 22 Fed. 662, The Keystone (D. C.) 31 Fed. 412, and Robinson v. Sugar Refining Company (D. C.) 70 Fed. 792.

The last matter set up by the libelant as a defense against this claim is the fact that, when these consignees obtained the bills of lading, they found upon them a notation that the ship was "not responsible for broken or cut bales."   The captain testified that he insisted upon this qualification of the bills of lading before he would sign them at the port of lading.   The bills of lading state, in the usual printed form, that the cargo was shipped in good order and condition.   This notation upon the bills of lading cannot protect the ship from the responsibility for negligent loading and stowage.   The first section of the act of February 13, 1893 (27 Stat. 445, c. 105), provides as follows:

"That it shall not be lawful for the manager, agent, master or owner of any vessel transporting merchandise or property from or between ports of the United States and foreign ports to insert in any bill of lading or shipping document any clause, covenant or agreement whereby it, he, or they shall be relieved from liability for loss or damage arising from negligence, fault or failure in proper loading, stowage, custody, care, or proper delivery of any and all lawful merchandise or property committed to its or their charge.   Any and all words or clauses of such import inserted in bills of lading or shipping receipts shall be null and void and of no effect."   Section 4289, Rev. St.; U. S. Comp. St. 1901, p. 2946.

It will be noted that the prohibition is aimed at an attempt of a master to relieve himself from liability "arising from negligence, fault or failure in proper loading, stowage, custody," etc.   In the case at bar,

the captain, with the stevedores wholly under his control and management, noticed they were loading and stowing the root in an improper manner, they were breaking the bales against his protest, and he should have insisted upon their performing their duty in a proper and careful manner. Their actions in this particular were his, for which he is responsible in case damage resulted; and an attempt to escape this responsibility by a notation such as we find upon these bills of lading, in the judgment of the court, is an attempt to do what the provisions of this act aimed to prevent.

The evidence is not sufficiently clear as to the amount of damage sustained by the respondent for the court to pass upon that question at this time. It is therefore referred to a commissioner, who, with the assistance of the parties, may pass on the question and report.