MONONGAHELA RIVER CONSOL. COAL & COKE CO. et al. v. SCHINNERER.

SAME v. HURST.

(Circuit Court of Appeals, Sixth Circuit.   March 13, 1912.   On Petition for Rehearing and Stay of Mandate, June 4, 1912.)

Nos. 2,173, 2,174.

1. ADMIRALTY (§ 60*)—JURISDICTION—SUIT FOR WRONGFUL DEATH—SUFFICIENCY OF LIBEL.
    A court of admiralty is not without jurisdiction of an action in personam to recover for negligent injury causing death, based on a collision in the Mississippi river, because the libel fails to show in which of two states the wrongful act was committed, since the court may take

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

cognizance of and apply the law of the state in which the proof shows the collision to have occurred.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 482–496; Dec. Dig. § 60.*]

2. ADMIRALTY (§ 21*)—JURISDICTION—SUIT FOR WRONGFUL DEATH.

A right of action for wrongful death given by a state statute may be enforced in admiralty by proceedings in personam.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 218–220; Dec. Dig. § 21.*

Jurisdiction in admiralty of torts, see note to Campbell v. H. Hackfeld & Co., 62 C. C. A. 279.]

3. ADMIRALTY (§ 118*)—REVIEW ON APPEAL—FINDINGS OF FACT.

The rule that the judgment of a District Court in an admiralty suit will not be reversed, when the result depends alone on a question of fact on which the evidence is conflicting, unless there is a decided preponderance against the judgment, where the trial judge saw and heard the witnesses, is not inapplicable because he did not file a written opinion when his finding on such question is obvious from the judgment rendered.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 758–775, 794; Dec. Dig. § 118.*]

4. COLLISION (§ 90*) — STEAMER AND DISABLED MOTOR BOAT — FAULT OF STEAMER.

A steamer with a tow alongside held chargeable with negligence in running down and sinking a disabled and drifting motor boat on the Mississippi at night; it being shown that, while the boat carried no lights, the four men in her shouted and waved burning papers and were heard and seen by others at a distance of 400 yards, and by a preponderance of the evidence that the motor boat could have been seen by the steamer, in the exercise of reasonable care, when at least 250 or 300 feet away, and in time to avoid the collision.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 181–186; Dec. Dig. § 90.*]

5. COLLISION (§ 144*)—SUIT FOR WRONGFUL DEATH—EFFECT OF CONTRIBUTORY NEGLIGENCE.

In a suit in admiralty in personam for the recovery of damages on account of negligent injury causing death, the usual admiralty rule that contributory negligence has merely the effect to divide the damages does not apply; but where, under the state statute, such negligence defeats the action, that rule will be followed by the admiralty court.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 296; Dec. Dig. § 144.*]

6. NEGLIGENCE (§ 93*)—ACTION FOR WRONGFUL DEATH—CONTRIBUTORY NEGLIGENCE—IMPUTED NEGLIGENCE.

A party of four men went up the river from Memphis on a hunting trip, using a motor boat owned and operated by one of the party. Coming back after dark, the motor became disabled, and the boat drifted with the current until she was negligently run down and sunk by respondent's steamer coming upstream with a tow on her side, and three of the party were drowned. The boat was not equipped with either the lantern, whistle, or bell required by the navigation rules to be carried by such craft. In suits against the owner of the steamer to recover for the deaths of two of the party, neither of whom was the owner of the boat, it did not appear that either had any duty in connection with the running of the boat, or that either had any knowledge of its lack of proper equipment. It appeared, however, that the occupants shouted and waved burning papers, and were seen, or should have been seen, by the steamer in time for her to have prevented the collision in the exercise of proper care. Held, that whether libelants' intestates were considered as members of the crew, or as guests of the owner of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

boat, they were not required, at the peril of losing rights of action against a third person for the latter's negligence, to make inspection as to the boat's equipment, and that the negligence of its owner was not imputable to them. *Held,* further, that if chargeable with negligence in that respect, it was not a contributing cause of the collision, since the use of the prescribed equipment could have done no more than they actually did, if as much, to warn the steamer of their presence and situation.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 147–150; Dec. Dig. § 93.*]

## On Petition for Rehearing and Stay of Mandate.

7. ADMIRALTY (§ 25*)—JURISDICTION—SUIT FOR WRONGFUL DEATH.

The failure of a libel in admiralty to recover for a death resulting from a maritime tort under a state statute to plead such statute does not affect the jurisdiction of the court; and, conceding that the libel would be subject to demurrer or exception, the defect is waived if objection is not so taken, since the court will take judicial notice of the statute.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 260–264; Dec. Dig. § 25.*]

Appeals from the District Court of the United States for the Western District of Tennessee.

Suits in admiralty by Mrs. Bessie Schinnerer and by Mrs. Emma Hurst against the Monongahela River Consolidated Coal & Coke Company and the Huntington & St. Louis Towboat Company. Decrees for libelants, and respondents appeal. Affirmed.

R. P. Cary and C. H. Stephens (Stephens, Lincoln & Stephens and Charles H. Stephens, Jr., on the brief), for appellants.

Wm. R. Harrison, for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. The decedents of the respective appellees were drowned in the Mississippi river, near Memphis, as the result of a collision between the motor boat in which they were riding and a tow of the steamer Enterprise, owned by the defendant Coal & Coke Company, and operated by the defendant Towboat Company. Under separate proceedings in personam, in admiralty, heard together by the district judge, without a jury, decrees, each in the sum of $10,000, were entered in favor of the respective libelants, against both defendants, on account of the respective deaths. From these decrees, these appeals are taken. No point is made in the argument against the liability of both defendants in case the negligence of the Towboat Company caused the deaths of the respective decedents, and in the absence of contributory negligence on their part.

[1] A primary question is presented as to the sufficiency of the libels. As originally filed, they alleged that the accident took place "on the Tennessee side of the river." Respondents' answer denied this allegation, and averred that the boat "was on the Arkansas side of the river, and out of and beyond the jurisdiction of this court," which fact the answer urged in bar. The libels were then amended so as to allege that the accident took place "on the waters of the

Mississippi river, between a mile and two miles above the wharf of the city of Memphis, and between the shores of Arkansas and Tennessee." At the opening of the trial upon the merits, respondents' exception previously filed, that the allegation as to the place where the accident occurred was too uncertain to enable intelligent answer by defendants, was overruled; the court expressing the opinion that it would "be able to apply the law of the state in which the proof shows the accident to have occurred," and that, when that should appear, "counsel can address himself to the law of the state in which the proof may show it did occur." The ground of this exception is that, inasmuch as there was no right of action in admiralty for negligent injuries causing death, except by virtue of the statute of the state where the wrongful act occurred (The Harrisburg, 119 U. S. 199, 7 Sup. Ct. 140, 30 L. Ed. 358), the court obtained no jurisdiction over the action for lack of allegation of the existence of a statute creating the same; and that the importance of the objection was emphasized by the difference between the statutes of Tennessee and Arkansas as to limitation of actions, beneficiaries, and measure of damages. But as the courts of the United States take judicial cognizance of the public statutes of the several states of the Union (Owings v. Hull, 9 Pet. 607, 9 L. Ed. 246; Elwood v. Flannigan, 104 U. S. 562, 568, 26 L. Ed. 842; Gormley v. Bunyan, 138 U. S. 623, 635, 11 Sup. Ct. 453, 34 L. Ed. 1086), and are presumed to know that actions for negligent injuries causing death are based upon state statutes, there was no lack of jurisdiction to maintain the action. And as no question of limitation of action is raised, and as the court ultimately held that the cases were governed by the laws of Arkansas, as was contended by respondents in their pleas to the original libels, no prejudice could have resulted from the amendment. The assignments based upon the overruling of these exceptions are thus not well taken.

[2] Sections 6289 and 6290 of Kirby's Digest of the Statutes of Arkansas make provisions for the recoveries claimed. Such right of recovery can be enforced in admiralty by proceedings in personam. The Hamilton, 207 U. S. 398, 28 Sup. Ct. 133, 52 L. Ed. 264; The City of Norwalk (D. C.) 55 Fed. 98; Robinson v. Detroit & Cleveland Steam Nav. Co. (C. C. A. 6) 73 Fed. 883, 20 C. C. A. 86.

Turning to the circumstances of the accident:

The decedents, together with one Auferoth and one Dietrich, were returning to Memphis from Owens Bar (a few miles above Memphis), where they had gone for duck shooting. The motor boat belonged to Dietrich, and was in his charge and general operation. When near Memphis, in the early evening, but after dark, the batteau in tow of the motor boat was seen to be filling. In attempting to empty it, the oars, which were in the batteau, were broken, and, except a stub of one oar, were lost; and the electric wires connecting with the motor were broken loose, and the motor boat thus disabled. All effort to repair the injury to the motor boat failed, and it drifted helplessly downstream, practically broadside, upon a 10-mile current, until it was struck by a fuel tow lashed to the side of the ascending steamer. All the occupants of the motor boat were thrown into the water, and all were drowned except Auferoth, who was pulled aboard the fuel tow.

The motor boat carried no lantern or permanent light of any kind. To obtain light for the attempted repair of the power, envelopes and other papers were burned; and after the steamer was seen, and for some little time before the collision, burning papers were waved and shouts given by the occupants of the motor boat in a frantic effort to attract the steamer's attention and avert the catastrophe. Previous to the collision, the motor boat was seen by the steamer's navigator, and the searchlight thrown on the motor boat.

Libelants contend that the motor boat and its helpless condition actually was, or should have been, discovered by the steamer in time to have avoided the collision, and that those in charge of the steamer were grossly negligent in running down the motor boat. Respondents contend that the steamer was not negligent in failing to make earlier discovery of the motor boat; that, on discovering the latter's condition, every effort was made to escape collision, by immediately stopping the engine and immediately thereafter backing the boat; and that the accident was due solely to the negligence of the occupants of the motor boat in respects later to be mentioned.

[3] There is no controversy over the facts alleged as contributory negligence. On this subject, the only controversy is over the effect of these facts. There is, however, a sharp conflict as to the facts alleged to constitute respondents' negligence; and although we here consider the testimony de novo, we do this in recognition of the rule stated by Judge (now Mr. Justice) Lurton, in City of Cleveland v. Chisholm, 90 Fed. 431, 434, 33 C. C. A. 157, 160, that:

"The judgment of the District Court will not be reversed when the result depends alone upon questions of fact depending upon conflicting evidence, unless there is a decided preponderance against the judgment, where the trial judge saw and heard the witnesses, and had an opportunity of weighing their intelligence and candor."

The rule thus stated has peculiar force as applied to the consideration of the testimony in this case. So far as concerns the question of respondents' negligence, we are not impressed with their contention (upon the authority of The City of New York [C. C. A. 2] 54 Fed. 181, 4 C. C. A. 268) that the rule we have referred to has no application, from the fact that no opinion was filed by the district judge, for it is obvious that the latter could not have rendered decrees for libelants without finding respondents guilty of negligence causing the death of decedents.

[4] We have no difficulty in reaching the conclusion that the collision would not have taken place but for the negligent operation of the steamer. Auferoth testified that the steamer's searchlight was thrown on the motor boat when the latter was 400 or 500 yards from the steamer. Grooms, whose position on a boat near the scene gave him a view of the accident, states the distance at 400 yards. The testimony of Casey, the steamer's snag watchman (who at one time gave the distance at 250 to 300 yards) is not of great help to one not seeing the witness; but the trial judge had means (including comparisons and indications made by the witness) of judging the weight to be given his testimony. Captain Nichols, who was acting as the steamer's pilot, says the motor boat was about 25 or 30 yards away when the search-

light was turned upon it. Butler, the pilot of the Linder, states the distance as either 75 or 80 feet or 75 or 80 yards; it is not clear which. The only remaining witness engaged in the steamer's navigation whose testimony is of substantial help is Washington, the fireman on the steamer, who was attracted from his fire box by the cries of the men on the motor boat. He says that when he came to the head of the steamer (which was after he heard the cries, but how long after does not definitely appear) the searchlight was then on the motor boat, and the latter about 50 or 60 yards away. It is clear the steamer could not have been stopped, or its course so changed as to avoid the collision, within 25 or 30 yards. We are satisfied, however, from the evidence, that collision could reasonably have been avoided had the motor boat been seen by the steamer when not more than 250 or 300 feet away. Should it have been so seen by the exercise of reasonable care? Butler's attention was attracted by the men's cries when the motor boat was 300 yards from him, and he saw a dim light on the boat before he saw the searchlight turned on. After the searchlight was put on, he saw the men on the motor boat, but could not tell how many there were. As we understand it, the motor boat was, at the time, astern of Butler's boat. Grooms, who thinks he was 400 or 500 yards from the motor boat, heard the cries both before and after the searchlight was turned on. We are satisfied that the light from the burning papers on the motor boat was readily visible at least 300 yards away. Captain Nichols, however, says that his attention was drawn to the motor boat only by the light (which must have been that of the burning papers); that he heard no cries, and that the noise of the engine and of escaping steam, and other noises incident to the operation of the boat, would prevent his hearing the cries. The weight of Captain Nichols' testimony is considerably impaired both as respects the motor boat's distance from the steamer when actually discovered by Captain Nichols, and as regards the time when the latter should, in the exercise of reasonable care, have seen it. . Captain Nichols denies that he saw the men on the motor boat even when the searchlight was turned on it; while Auferoth says Captain Nichols told him to the contrary; and Washington, whose position on the deck was less favorable than that of the pilot, says that he saw four men in the motor boat waving their light. Moreover, Washington heard the cries when in the fire box, and it would seem that his opportunities for hearing were at least no better than those of the pilot. Butler's experience has already been stated. Casey and Washington say Captain Nichols told them that when he first saw the motor boat he thought he had room to get by, and Washington says the boat was not stopped or the gong sounded until after Auferoth's rescue.

We think it clear that the steamer saw, or, in the exercise of reasonable care should have seen, the motor boat, and the danger of collision with it, in time to have prevented collision.

[5] The libelants are thus entitled to recover unless negligence on the part of decedents contributed to the injury. In a proceeding in admiralty, in personam, for the recovery of damages on account of negligent injuries causing death, the usual admiralty rule that contrib-

utory negligence has merely the effect to divide the damages does not apply. See Robinson v. Detroit & C. S. Nav. Co., supra; The City of Norwalk, supra. Without deciding what the rule would be in applying the statute of a state in which contributory negligence does not defeat, but merely reduces damages, it is clear that, in enforcing the statute of a state in which the rule of the common law prevails that contributory negligence defeats the action, such rule must be followed by the admiralty courts. We understand the rule in Arkansas is that contributory negligence of the injured person defeats recovery, except where the direct cause of the injury is the omission of the other party, after becoming aware of the injured person's negligence, to use a proper degree of care to avoid the consequences of such negligence. Little Rock, etc., St. Ry. v. Pankhurst. 36 Ark. 371; Kansas City, etc., Ry. Co. v. McGinty, 76 Ark. 356, 362, 88 S. W. 1001.

[6] One ground of alleged contributory negligence requires separate consideration. One of the pilot rules pertaining to the navigation of the Mississippi river provides that:

"Open vessels of ten tons and under, propelled by gas, fluid, naphtha or electric motors, shall not be required to carry the side lights required for other vessels, but shall, if they do not carry such lights, carry a lantern, having a green slide on one side and a red slide on the other; and, on approaching of other vessels, such lantern shall be exhibited in sufficient time to prevent collision, and in such manner that the green light shall not be seen on the port side nor the red light on the starboard side."

The rule also provides that boats of the character and capacity mentioned shall be provided with whistle and with fog bell. The motor boat carried no lantern, whistle, or bell. Respondents invoke the rule recognized and applied by this court in Hawgood Transit Co. v. Mesaba S. S. Co., 166 Fed. 697, 92 C. C. A. 369, that the fact that a boat was at the time of collision in actual violation of a statutory rule designed to prevent collision throws the burden upon her to show that such violation could not have contributed to the collision. The application of this rule to the case before us depends upon whether the negligence of Dietrich, in failing to equip his boat as required by the navigation rules, is imputable to the decedents, for there is no evidence that the decedents had anything to do with, or any knowledge of, the lack of equipment of the motor boat in this respect, at least prior to the emergency demanding the use of the lantern.

It is the general rule that the negligence of a driver of a vehicle or navigator of a vessel is not imputable to a mere passenger or guest of the driver or navigator, when such guest or passenger has no authority or control over such driving or navigation. Little v. Hackett, 116 U. S. 366, 6 Sup. Ct. 391, 29 L. Ed. 652; Robinson v. Detroit & C. S. Nav. Co., supra; Hot Springs St. R. R. Co. v. Hildreth, 72 Ark. 572, 579, 82 S. W. 245; Turnpike Co. v. Yates, 108 Tenn. 428, 67 S. W. 69; St. Louis & S. F. R. Co. v. McFall, 75 Ark. 30, 86 S. W. 824, 69 L. R. A. 217, 5 Ann. Cas. 161, where the negligence of a locomotive engineer was held not imputable to the train conductor. It is also the rule that subordinate members of the crew of a boat are not affected by negligence of the navigating officer, nor by that of the owner, in failing to provide proper equipment. The Niagara

(D. C.) 77 Fed. 329, affirmed 84 Fed. 902, 905, 28 C. C. A. 528 (C. C. A. 2). On the other hand, where two or more persons take an active part in a joint enterprise, the negligence of each, while so actively engaged, is regarded as the negligence of all. Railroad Co. v. Kistler, 66 Ohio St. 326, 343, 64 N. E. 130. And guests and passengers cannot be relieved of a charge of negligence from the mere fact of such relation, when the appearances or circumstances coming to their notice were such as to indicate danger and to give opportunity to avert it by timely warning or active effort on their part. Davis v. C., R. I. & P. R. Co. (C. C. A. 8) 159 Fed. 10, 18, 88 C. C. A. 488, 16 L. R. A. (N. S.) 424; Brommer v. Pennsylvania Co. (C. C. A. 3) 179 Fed. 577, 581, 103 C. C. A. 135, 29 L. R. A. (N. S.) 924; Brickell v. Railway Co., 120 N. Y. 290, 293, 24 N. E. 449, 17 Am. St. Rep. 648. To which of these classifications do decedents belong?

The rule last referred to plainly has no application to the case before us, for the fault we are considering was one of equipment only, and the cases cited in support of the rule involved negligent driving or operation. In a sense all of the occupants of the motor boat (although Dietrich's guests so far as riding in the boat is concerned) were engaged in a joint enterprise, to wit, a hunting excursion. But they do not appear to have had anything to do with procuring the boat, or with equipping it. Indeed, while they took some part in the operation of the boat (at least after the power gave out), there is nothing to indicate that their active help as navigators was expected, or would be required under ordinary circumstances. Dietrich seems to have had entire charge and direction of the boat's operation, and whatever was done by the others, under normal circumstances, would naturally be either because volunteered by the others or because by special request of Dietrich. It does not appear that decedents were familiar with navigation, or even knew of the pilot rule in question; much less that they knew of the absence of the equipment under consideration, which, indeed, would not necessarily be exposed to casual view. We think that, with respect to this requirement of equipment under the navigation rules, decedents should be classed rather as members of a crew, or as invited guests. We think that persons about to ride in a boat of another, under circumstances such as exist here, should not be required (at the peril of losing rights of action against a third person, for the latter's negligence) before entering the boat, to make an inspection with a view of determining whether the boat carries the equipment required by law. In our opinion, Dietrich's negligence in failing to equip his boat with a lantern having colored slides, whistle, and bell, is not imputable to decedents.

But if we are right in the conclusion that the steamer saw, or, in the exercise of reasonable care, should have seen, the motor boat in time to have prevented collision, it must result that the absence of the equipment in question could not have contributed to that collision; for the presence of the equipment could not ultimately have done more than warn the steamer of the presence of the motor boat, and the danger of collision with it, in time to prevent such collision; and that is what we find did result from the burning of the papers and the cries of the men.

The only remaining questions of alleged contributory negligence requiring attention relate to the leaving of the oars in the batteau instead of in the motor boat, the failure to fire, as a distress signal, the guns carried by the hunters, and (apart from the navigation rules) the going upon the river at night without a permanent light of some kind, as distinguished from colored or signal lights.

We are unable to find negligence in leaving the oars in the batteau rather than in the motor boat; nor does it seem reasonable that a discharge of the fowling pieces would have given better, if, indeed, as good notice of distress as the burning of papers and the cries of the men in the motor boat. While an ordinary and constantly burning lantern might have been more effective as a distress signal than burning papers (although this is at least doubtful), we are by no means satisfied, upon this record, that its use would have brought the attention of the steamer to the presence and condition of the motor boat any sooner than did the means actually employed. The alleged contributory negligence of defendants is not in our opinion established.

The damages awarded were not excessive.

The conclusion reached is that the decrees appealed from should be affirmed, with costs.

## On Petition for Rehearing and Stay of Mandate.

[7] 1. The Petition for Rehearing. It is strongly urged that the district court had no jurisdiction over the libel, except to dismiss it. The argument is substantially this: That under the general admiralty law no right of action exists for negligent injuries causing death; that such recovery can be had only by virtue of express statute; that such statute must be pleaded; that lack of pleading in this regard cannot be supplied by judicial notice of the existence of statute; and that failure to plead such statute is fatal to jurisdiction.

The question is not, strictly speaking, one of the jurisdiction of the admiralty court, but pertains rather to libelants' right of action or the remedy therefor. The conclusion that in the absence of statute no recovery can be had in admiralty for negligent injuries causing death rests upon the proposition, announced in Insurance Company v. Brame, 95 U. S. at page 756, 24 L. Ed. 580, that "by the common law no civil action lies for an injury which results in death," and that admiralty follows the common law in this regard. The Harrisburg, 119 U. S. 199, 213, 7 Sup. Ct. 140, 147 (30 L. Ed. 358). As said by Chief Justice Waite in the latter case:

"The rights of persons in this particular under the maritime law of this country are not different from those under the common law, and as it is the duty of courts to declare the law, not to make it, we cannot change this rule."

Where, however, state statutes make provision for such recovery, the right thereto or remedy therefor may be enforced in admiralty by proceedings in personam, as pointed out in the original opinion herein. Courts of admiralty have general jurisdiction over maritime torts. Ex parte McNiel, 13 Wall. 236. 242 (20 L. Ed. 624). As said by Justice Swayne in the case last cited, in answering a contention that a

state law providing for a pilotage fee could not give jurisdiction to a federal court:

"A state law cannot give jurisdiction to any federal court; but that is not a question in this case. A state law may give a substantial right of such a character that, where there is no impediment arising from the residence of the parties, the right may be enforced in the proper federal tribunal, whether it be a court of equity, of admiralty, or of common law. The statute in such cases does not confer the jurisdiction. That exists already, and it is invoked to give effect to the right by applying the appropriate remedy. This principle may be laid down as axiomatic in our national jurisprudence. A party forfeits nothing by going into a federal tribunal. Jurisdiction having attached, his case is tried there upon the same principles, and its determination is governed by the same considerations, as if it had been brought in the proper state tribunal of the same locality. In no class of cases has the application of this principle been sustained by this court more frequently than in those of admiralty and maritime jurisdiction."

The statutes of Tennessee and of Arkansas were enforceable in the admiralty proceedings to precisely the same extent as in actions instituted in the courts of the respective states. The district court sitting in admiralty had jurisdiction thereover. Whether the libels would have been demurrable or subject to exception because of failure to plead the statute is not determinative of the question here presented. The exceptions to neither the original nor the amended libel raised such question. The exceptions to the original libel were based solely on the right to limit liability. Those addressed to the amended libel failed to raise the point that the remedy invoked was not given by the statutes of either Tennessee or Arkansas, or both. If the jurisdictional question now presented is good, it would have been equally good against the original libel. Under the authority of Furman v. Nichol, 8 Wall. 44, 57, 19 L. Ed. 370, the admiralty court could apparently have taken judicial notice, without pleading, of the death act of the state of Tennessee; and in Lamar v. Micou, 114 U. S. 218, 223, 5 Sup. Ct. 857, 859 (29 L. Ed. 94), it was said that:

"The law of *any state of the Union*, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice, *without plea* or proof." (Italics ours.)

See, also, Bond v. Farwell Co. (C. C. A. 6) 172 Fed. 58, 65, 96 C. C. A. 546, 553.

But whether or not the libel was subject to demurrer or exception for failing to plead either the Tennessee or Arkansas statute, we think it clear that the objection was waived by failure to so demur or except. See Pioneer S. S. Co. v. McCann (C. C. A. 6) 170 Fed. 873, 880, 96 C. C. A. 49. We find nothing in the cases cited by appellants opposed to this view. The cases of Mountain View Min. & Mill. Co. v. McFadden, 180 U. S. 533, 21 Sup. Ct. 488, 45 L. Ed. 656, and Mutual Life Ins. Co. v. McGrew, 188 U. S. 291, 23 Sup. Ct. 375, 47 L. Ed. 480, 63 L. R. A. 33, on which special reliance seems to be placed, involved distinctively questions of federal jurisdiction; the former being a removal proceeding, and the latter an attempted review of the decision of a state court on the ground that a federal question was involved therein. No question of federal jurisdiction, as distinguished from the jurisdiction of the state courts, is presented here.

The right to enforce in the admiralty court the remedy given by the state death act rests upon precisely the same basis as if the suit were in the state court.

In our opinion, the objection to the jurisdiction of the district court is not well taken. The other points raised under the petition for rehearing are sufficiently discussed in the original opinion. The petition for rehearing should be denied.

2. The Petition for Stay of Mandate. The District Court dismissed the proceedings for limitation of appellants' liability, at least so far as the rights of appellees here are concerned. Appeal to this court has been taken from that order of dismissal, and return thereto has been made. Appellants ask that the mandate in the cases already decided be stayed pending decision upon appeal in the proceedings to limit liability. While we are not now prepared to say that the reversal of the order dismissing those proceedings would or should interfere with appellees' enforcement of their decrees by suit upon the appeal bond, or otherwise, we could not say that it might not have such effect, without considering the appeal itself, which we should not do in advance of hearing thereon. The mandate will accordingly be stayed until the hearing and decision upon the appeal in the limitation proceedings, or until the further order of the court, upon condition that appellants within five days hereafter file in this court, in the matter of the last-named appeal, an undertaking that the record as well as appellants' brief be printed and filed on or before September 1st, next, and appellants' consent that the appeal stand for hearing on the first day of the next October session of this court.