## NATIONAL DREDGING & LIGHTERAGE CO. v. TURNEY TRANSP. CO.

(Circuit Court of Appeals, Third Circuit.  May 17, 1922.)

No. 2826.

1. Shipping ⚖54—Liability for overloading chartered barge.

Where a chartered barge was fast alongside a dredge being loaded with sand, it was the duty of the barge master, employed by the owner to look after her safety, to control the loading, and to stop it by timely protest when the barge had aboard as much as he thought she could safely carry, and it was the duty of the dredge master, acting for the charterer, to heed his protest.

2. Admiralty ⚖118—Findings presumptively correct on appeal.

Findings of a trial judge, who saw and heard the witnesses, will have great weight with an appellate court, and will not be disturbed, unless clearly against the evidence.

3. Shipping ⚖54—Liability for overloading chartered barge.

Sinking of chartered barge from overloading with sand from a dredge *held*, under the evidence, due to faults of both barge master and dredge master, for which owner and charterer were equally liable.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Suit in admiralty by the Turney Transportation Company against the National Dredging and Lighterage Company. Decree for libelant, and respondent appeals. Modified.

For opinion below, see 272 Fed. 495.

Willard M. Harris, of Philadelphia, Pa., for appellant.

Lewis, Adler & Laws, of Philadelphia, Pa. (Otto Wolff, Jr., of Philadelphia, Pa., of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. This appeal is from a decree in admiralty finding a charterer at fault in overloading a chartered barge and holding the charterer liable in damages for her sinking. 272 Fed. 495.

The Dredging Company, engaged in dredging in the Delaware River with the dredge "National," had chartered the barge "Emma" from the libelant. When loading sand upon the barge, she sank. Each craft was in charge of her own master. The court found that the barge master had protested against further loading and that the dredge master ignoring his protest had continued loading, and that, in consequence,

the barge sank. A decree based on the sole fault of the dredge master was entered for the libelant for the full amount of damages. The respondent appealed.

[1] On this review we start with two rules of admiralty, sustained by the cases and abundantly testified to by men engaged in the same maritime occupation: First, that when a barge is fast alongside a dredge receiving cargo, it is the duty of the barge master, who has been employed by the owner to look after her safety, to control the amount and disposition of her cargo and to stop the loading by timely protest when the barge has aboard as much as he thinks she can safely carry; and second, that it is the duty of the dredge master, acting for the charterer, to heed his protest. Niagara v. Cordes, 21 How. 7, 16 L. Ed. 41; The Elton, 83 Fed. 521, 31 C. C. A. 496; Burdge v. 220 Tons of Fish Scrap (D. C.) 2 Fed. 783; The William Power (D. C.) 131 Fed. 136.

Coming to the testimony, the only undisputed fact in the case is that the barge sank. By whose fault she sank, whether that of the dredge master or the barge master, depends upon a finding as to why she sank, and this in turn upon another finding as to when she sank. Out of the confusion of testimony we find this to be the true story:

The barge was being loaded with sand delivered in a continuous stream from a stationary chute on the dredge. In distributing her load, the barge, by means of a steam winch on the dredge, was moved aft in order to be loaded forward and was moved forward in order to be loaded aft. She had been loaded very heavily in the stern, or, as the barge master himself said, she was already "overloaded" in the stern. Frank, the chute tender of the dredge, ordered the barge aft to load her at the bow, when Sam, the master of the dredge, directed him to put more sand on the stern. The barge master said to Sam: "I think we have got enough on her." Nevertheless, the crew of the dredge pulled the barge forward, the barge master helping with the lines, and loaded more sand on the stern. They then stopped loading the stern and, with the sand running aboard all the while, pulled the barge aft and began loading amidship when she lurched and sank. We are aware that this finding of time and place of sinking is against testimony that the barge sank when being loaded at the stern. There is, however, little dispute that the time at which she sank was about one-half hour after the quoted conversation between the barge master and dredge master, and that throughout this period the barge master allowed sand to run aboard without protest.

[2] Recapitulating these facts in the order in which they appeal to our judgment as affecting liability, the barge master in the first place permitted, without protest on his part, the original overloading of the stern. This was his fault. When the dredge master ordered more sand on the stern, the barge master spoke the words we have quoted— his only comment. The question is whether it amounted to a protest. It was at best a feeble protest. We have had doubt as to whether it was a protest at all. Although we are here considering the testimony de novo, we shall not overlook the rule that findings of a trial judge, who saw and heard the witnesses will have great weight with an appel-

late court and will not be disturbed unless clearly against the evidence. Monongahela River C. C. & C. Co. v. Schinnerer, 196 Fed. 375, 117 C. C. A. 193, certiorari denied 226 U. S. 608, 612;[1] The J. G. Gilchrist, 183 Fed. 105, 105 C. C. A. 397; P. & G. S. S. Co. v. McCauldin, 202 Fed. 735, 121 C. C. A. 197; P., B. & W. R. R. Co. v. Southern Transportation Co. (C. C. A.) 205 Fed. 732, certiorari denied 231 U. S. 750, 34 Sup. Ct. 321, 58 L. Ed. 466.

[3] While, upon first view, we regarded the statement of the barge master, as it appears in the type of the record, more in the nature of an opinion than a protest, yet, realizing that the trial judge saw the witnesses and heard their testimony and feeling that their intelligence and candor, manner and tone may have contributed to his conclusion, we yield to his finding that the barge master made a protest against further loading at the stern. The dredge master, however, did not heed it. Therefore, in this he was at fault. After loading more sand on the stern the dredge crew moved the barge aft, bringing her midship under the chute which was running sand all the time. The barge master failed to protest against loading amidship. Here he was at fault. Then it was that the barge lurched and sank. Thus it appears that in the final stages of loading, both masters were at fault. It is impossible to say whether but for the fault of one or the other the barge would not have sunk. If the dredge master had heeded the protest of the barge master and had not further loaded the stern, she might not have sunk; or, if after loading the stern the barge master had protested against loading amidship, again the barge might not have sunk; but as she was loaded at both stern and amidship—at the stern by the fault of the dredge master and amidship by the fault of the barge master—and was loaded in each place to or below the danger line, we are of opinion that the barge sank by reason of the concurring faults of both masters and that, accordingly, the damages and costs should be borne equally by the parties.

We direct that the decree below be modified to conform with this opinion.