Circuit Court of Appeals, Seventh Circuit.
Jan. 6, 1934.

---

## MOBILE, MIAMI & GULF S. S. CO., Inc., v. LAKE GILTEDGE S. S. CO.
### No. 7074.

Circuit Court of Appeals, Fifth Circuit.
Jan. 11, 1934.

Wm. B. Inge and C. C. Inge, both of Mobile, Ala., for appellant.

Palmer Pillans, of Mobile, Ala., for appellee.

Before BRYAN, HUTCHESON, and WALKER, Circuit Judges.

HUTCHESON, Circuit Judge.

All matters of account between appellant, the charterer, and appellee, the owner of the Lake Giltedge, were settled and adjusted, except one, an item of $688.26, the amount of expense and loss by delay caused the charterer by the overloading of the vessel at Port Tampa. This is an appeal from an adverse decision against the charterer on that one. The charter party provided "charterers are to load, stow and trim the cargo at their expense, under the supervision of the master." Appellant, relying upon this provision, and upon the general principle that it is the duty of the master under a time charter of this kind to see to the proper and safe loading of his vessel, 35 Cyc. 129; Burdge v. Two Hundred and Twenty Tons of Fish Scrap (D. C.) 2 F. 783; The Giles Loring (D. C.) 48 F. 463; Bethel v. Mellor & Rittenhouse Co. (D. C.) 131 F. 129; Olsen v. United States Shipping Co. (C. C. A.) 213 F. 18; National Dredging & Lighterage Co. v. Turney Transp. Co. (C. C. A.) 281 F. 315, insists here that the responsibility of the owner for the master's neglect of or failure to perform that duty may not be evaded by shifting it to the charterer on the ground advanced here. That ground is that the master's responsibility for the loading and that of the owner ceased when the charterer's agent Freeman, instead of arranging for the master to clear at the sub-custom house at Tampa, insisted that he come to the custom house at Tampa twelve miles away, for a clearance. It is not claimed, as indeed it could not be, that the charterer's agent had authority to order him to leave the ship for the time he says he did leave it, or that he did so order him to leave it at all before it was loaded. It is merely claimed that on Freeman's insistence that clearance at Tampa would be more convenient, he fell in with the suggestion. The proof showed that, when the master left, the loading was already nearly completed. Appellant contends that the ship was already overloaded. Appellee denies this. There is no question, how-

ever, that additional cargo was taken aboard after the master left, and that the ship was, when the loading was finished, so overloaded as to require a partial unloading and retrimming. The District Judge thought that the overloading should be laid to the master's leaving the ship before the loading was completed, and that the fault for that was the charterer's. He said: "It is urged that the master was in charge of the loading which is undoubtedly true. It is further urged that if he left the loading at the request of the agent of the charterers and went to Tampa leaving the direction of the loading to his mate that he was at fault and the owner is responsible. It was at the instance of the charterer and over the master's protest that he left the supervision of the loading, hence the charterer is in no position to claim negligence on the part of the master, either in supervising the loading, or in leaving such supervision to his mate."

We do not think this conclusion justified. If it appeared that the charterer had, in order to take advantage of his absence, caused the master to leave the boat, and that afterwards it did slip by, or force on over the protest of the mate more cargo than the ship should have taken on, the judgment would have been right. The Centurion (D. C.) 57 F. 412; Olsen v. U. S. Shipping Co., supra. Further, if the proof left fairly in doubt whether the charterer had, as appellee claims, "tolled" the master away in order greedily to load the vessel down, there would be a kind of rusticum judicium in dividing the loss and expense thus caused. No such case is at all made out. There is no proof that the charterer loaded any cargo on except with the full knowledge and concurrence of the mate whom the master had instructed and left in charge. Nor is there any proof that the charterer tolled the master away, or that he left the ship except at his own volition, and after making his own arrangements, for the further loading.

In addition to the insistence that the decree should be affirmed in whole, appellee insists that at least the recovery of the off hire should be denied.

We do not think so. Apart from the fact which impresses us, that the parties stipulated the amount in controversy and put in issue only the responsibility for it, we think that the charterer would not be compensated for the negligent loading if the off hire were denied him.

The decree is reversed and here rendered for appellant.