CIA DE NAVEGACION FRUCO, S.A., a Corporation, Libelant,

v.

The M/S HEINZ HORN, her engines, tackle, apparel, and furniture, etc.; Heinrich C. Horn, and Partenreederei, Respondents.

J. R. ATKINS, doing business as Alabama Fruit and Produce Company, Libelant,

v.

The M/S HEINZ HORN, her engines, tackle, apparel, and furniture, etc., and Heinrich C. Horn, Respondents.

Heinrich C. HORN, as managing owner of the M/S MARIE HORN, Libelant,

v.

CIA DE NAVEGACION, FRUCO, S.A. and J. R. Atkins, individually, Respondents.

Heinrich C. HORN, Libelant,

v.

CIA DE NAVEGACION FRUCO, S.A., and J. R. Atkins, individually, Respondents.

Nos. 2958, 2976, 2984, 2988.

United States District Court
S. D. Alabama, S. D.
Sept. 14, 1964.

Rae M. Crowe and W. Boyd Reeves, of Armbrecht, Jackson, McConnell & DeMouy, Mobile, Ala., for Cia De Navegacion Fruco, S. A., and J. R. Atkins.

John H. Tappan, Pillans, Reams, Tappan, Wood & Roberts, Mobile, Ala., for Heinrich C. Horn.

DANIEL HOLCOMBE THOMAS, District Judge.

These consolidated cases arise out of the time charter of two sister ships, the M/S HEINZ HORN and the M/S MARIE HORN, under a New York Produce Exchange Charter Party, by Cia De Navegacion Fruco, S. A., hereinafter referred to as Fruco, from Heinrich C. Horn, herein after referred to as Horn. The vessels were chartered for the carriage of bananas between good and safe ports in Ecuador and the Gulf Coast.

The HEINZ HORN was chartered April 30, 1962, and actually went on charter on or about June 3, 1962. The vessel, by terms of the charter party, was to remain on charter for a minimum period of three months to about six months, the exact time to be at the charterer's option. There was provision for thirty-day notice prior to redelivery. Charter hire at the rate of $19,000.00 per month was payable semi-monthly, in advance, in New York.

The MARIE HORN was chartered May 15, 1962, and actually went on charter on or about July 12, 1962. The terms of the charter party were very similar to those of the HEINZ HORN except that the MARIE HORN charter party was for a minimum of four months to about eight months, and the charter hire was at the rate of $19,150.00 per month, payable semi-monthly, in advance. There also was a provision for thirty-day notice on redelivery.

Two of these cases, Admiralty No. 2958 and Admiralty No. 2976, in rem and in personam, were brought by Fruco, as charterer, and J. R. Atkins, individually

and doing business as Alabama Produce Company, hereinafter referred to as Atkins, as consignee and owner of the cargo, for damage to the cargo of bananas on two separate voyages of the HEINZ HORN, hereinafter referred to as Voyage No. 1 and Voyage No. 4, and for the alleged breach of the charter party of the HEINZ HORN. (Atkins is also the president of Fruco and its principal stockholder.)

The other two cases, Admiralty No. 2984 and Admiralty No. 2988, were brought by Horn, as managing owner of the two vessels, against Fruco and Atkins, as guarantor, for charter hire allegedly due on the two vessels.

The HEINZ HORN and MARIE HORN are refrigerated vessels, sister ships of German registry. The vessels are equipped with a horizontal air delivery system. Refrigerated air is delivered into the lower No. 1 hold at the after bulkhead; flows forward and then up into the No. 1 'tween deck; then aft to the aft bulkhead, where it is either exhausted or redelivered into the cooling units. The reverse is true as to the No. 2 hold: refrigerated air is delivered into the lower No. 2 hold at the forward bulkhead, flows aft through the hold, up into the No. 2 'tween deck, and then forward to the forward bulkhead, where it is either exhausted or redelivered into the cooling units. The refrigeration unit on either of these vessels is capable of delivering air at a temperature below zero, Fahrenheit, and the temperature of the delivery and return air can be checked and regulated.

The HEINZ HORN picked up Mr. Dan Christian while passing through the Panama Canal on Voyage No. 1 en route to Puerto Bolivar, Ecuador. Mr. Christian was employed by Atkins but knew nothing of the banana business. He was sent by Atkins on this voyage to observe, in an endeavor to learn the banana trade.

The HEINZ HORN arrived in Bolivar, June 10, 1962. Loading commenced June 11 and was completed in the early morning hours of June 13. The vessel was loaded with bananas which were cut June 10, 11 and 12. The refrigeration on the vessel was not turned on until approximately 6:30 p. m. on June 12, some twenty-four hours after loading had commenced. The bananas upon loading were grass green, fresh and hard.

The entire No. 2 hold was fully loaded with some 9,357 cartons of bananas, at approximately 40 pounds per carton. The No. 1 lower hold was loaded with bananas in stems while the No. 1 'tween deck had bananas in stems in the wings with cartons in the way of the hatch, for a total in No. 1 hold of 3,539 stems and 2,009 boxes. Some space was left in the No. 1 'tween deck. Before loading, the bin boards, under the direction of Chief Mate Schultz, were removed; and no bin boards, slats or dunnage were used on the voyage.

The loading of the vessel was accomplished under the supervision and direction of the officers of the vessel. Chief Mate Schultz stated that he supervised the stowage of the cargo, thought it was proper and made no objections.

The master of the vessel signed bills of lading for the cargo on June 12, 1962. He noted no exceptions, which attested to the good condition of the cargo. Relying on these clean bills of lading, the letter of credit which had been previously furnished by Atkins was honored and the sale was completed, f. o. b. Ecuador on June 12, 1962.

The vessel sailed from Bolivar in the early morning hours of June 13. Only two mates were aboard, as had been the case during loading. On passing through the Panama Canal, Captain Horn, who had been sick for some time, left the vessel. This left only two mates aboard as the ship's officers. Normally there is a captain plus three mates. None of the officers aboard was experienced with the handling of boxed bananas.

Bananas are very delicate by their nature and present difficulties to their being successfully transported. They are cut in a green state and shipped under refrigeration to delay the ripening proc-

ess. The ripening temperature for bananas is generally 60°–62° Fahrenheit. For this reason bananas have to be transported at a cooler temperature, and generally 53°–55° Fahrenheit is considered acceptable.

Bananas give off carbon dioxide, ethylene gas and heat which hastens the ripening process. This also hastens the ripening of other bananas in proximity. So it becomes absolutely essential that the hold temperature of the vessel and pulp temperature of the bananas be maintained at approximately 54°–55° Fahrenheit, and that the foul air be exhausted sufficiently to remove the carbon dioxide, ethylene gas and heat.

In order to assure a proper hold temperature for the successful carriage of bananas it becomes imperative that the temperatures of delivery air and return air be very closely controlled. Delivery air should be 52°–53° Fahrenheit, and it should reach that level within eight hours after the hatches are closed. The difference between the temperature of the delivery air and the return air should be no more than 3° after pulldown.

The delivery air never steadied down to 52° Fahrenheit in either hold on Voyage No. 1, and it took approximately thirty-four hours to pull it down to 53° Fahrenheit. Return air also was very slow in being pulled down to a desired level.

The HEINZ HORN docked in Mobile at approximately 8:00 p. m. on the 21st of June, 1962. Discharging operations began at 7:00 a. m. the next morning. A very high percentage of the bananas were found to be yellow in color and in a ripened and ripening condition. Pulp temperatures were taken and some of them were as high as 62° Fahrenheit. Temperatures in the No. 2 hold were higher than in No. 1 hold. The bananas in both holds were damaged, but the greater damage was in the No. 2 hold which was completely filled with boxed bananas. Most of the bananas were damaged to such an extent, meaning ripe or ripening, that they were of no value to an importer.

The ripened state of the bananas was due to the high pulp temperatures at which they had been transported. The primary cause of the high pulp temperatures was the improper stowage of the boxes of bananas.

In the No. 2 hold the cartons of bananas were tightly stowed. No slats, bin boards or dunnage had been used to facilitate the flow of air between the cartons. The cartons were stowed an average of eight tiers high in both compartments of the No. 2 hold. No space was left between the cartons.

A factor which contributed to the ripening of the bananas was the excessive length of time taken in pulling down the temperature of the delivery and return air, and the failure of the vessel to maintain the proper hold temperature.

The bananas were packed in boxes or cardboard cartons designed for and used in the transporting of bananas. These cartons were well ventilated and their construction in no way caused or contributed to the damage done to the bananas.

Of the 9,357 cartons of bananas loaded in the No. 2 hold, only 1,007 were unloaded. Those taken out of the No. 2 hold were salvaged for $1,552.26. The other cartons were left on board the vessel because no buyer was willing to accept the bananas in such a ripened condition. The fair value of a box of good green bananas in Mobile at that time was approximately $3.20.

The charterer did not order the HEINZ HORN to sail again until the 29th of June. By terms of the charter party the vessel was to sail on orders of the charterer. For the time the vessel was tied up in the port of Mobile following discharge, Fruco deemed the vessel off charter and deducted $4,327.73 from the charter hire. During this time the vessel went on dry-dock for inspection for slightly more than than one day. This dry-dock time was at the owner's expense, and admittedly Fruco did not owe Horn for that time, which amounted to $676.44.

Atkins withheld and still withholds payment of charter hire in the amount of $25,946.76 because of his claim for bad cargo on Voyage No. 1.

The HEINZ HORN sailed from Mobile to Bolivar on June 29. Upon arrival in Bolivar the vessel had to stand by for two days awaiting bananas for loading. No bananas were ready to be loaded because the vessel had been delayed in sailing from Mobile. Atkins treated these two days as off charter for which he deducted $1,266.66 from charter hire.

The next claim for damaged bananas arose out of Voyage No. 4 of the HEINZ HORN. On this voyage no personnel were aboard other than the crew. The vessel was loaded and stowed under the supervision and direction of the master and mates at Guayaquil, Ecuador. The load consisted of 8,170 stems of bananas. Several thousand stems of bananas were rejected by the officers of the vessel before they got a complete load of acceptable bananas. For this load the master signed a bill of lading, noting no exceptions, as had been done on Voyage No. 1.

Some two days out of Guayaquil the master checked the bananas and had 335 stems jettisoned because they had begun ripening.

On Voyage No. 4, unlike Voyage No. 1, the stowage of the stems of bananas was accomplished by separating the cargo with bin boards, and the stems were stowed in such a fashion that small spaces were left between them to facilitate the flow of air. Metal gliding sheets had been installed in front of the fans and turning vanes had been installed subsequent to Voyage No. 1 in an attempt to increase circulation in the holds. The return air on Voyage No. 4 was not pulled down to the proper level for forty-eight hours in hold No. 2 and thirty-six hours in hold No. 1.

The HEINZ HORN docked in Mobile on Voyage No. 4 on the 11th of September 1962, and discharging commenced on the 12th. A very high percentage of these bananas were ripe and turning. Of the entire cargo, 519 stems were left aboard ship because they were too ripe to sell. Some 44% of the cargo was classified as green but could not be sold at the same price as good green fruit. Some 709 stems were sent to the city dump because they were too ripe to sell. The rest of the cargo was sold but at a reduced rate, due to the ripened condition.

On September 12, 1962, good green bananas were selling for approximately $5.00 per hundred pounds in Mobile. A stem of bananas averages approximately 85.44 pounds. None of the bananas on Voyage No. 4 brought as much as $5.00 per hundred pounds. The entire cargo was sold for only $16,408.51.

The HEINZ HORN made one more trip for Fruco and was then placed off charter. Atkins, as Fruco's representative, notified Mr. Mahn, the representative of Horn, by letter on September 21, 1962, of his intention to place both the vessels off hire at the end of their then present voyages. A telegram from Atkins to Mahn dated September 27, 1962, confirmed this intent.

The MARIE HORN was redelivered on the 27th of September, 1962, and the HEINZ HORN was redelivered on the 3rd of October, 1962. The minimum period of charter under the MARIE HORN's charter party was four months, which meant that she should have stayed on charter until November 12, 1962. The minimum for the HEINZ HORN was three months, and that time ended September 3, 1962. So, the HEINZ HORN sailed for more than the minimum time but the MARIE HORN was redelivered some 46 days before her minimum time had expired.

Following redelivery the HEINZ HORN immediately went on hire for another charterer. In fact, she went on hire on the 4th of October, 1962. The vessel was able to mitigate any damages she might have actually sustained as a result of the failure of Atkins to give a thirty-day notice on redelivery.

Following redelivery, the MARIE HORN went on hire to another charterer and was able to mitigate any damages

which might have resulted from the failure of Atkins to give a thirty-day notice on redelivery and from the early redelivery. In fact, the vessel was booked on September 3, 1962, for delivery to this subsequent charterer on October 1, 1962. This booking was made approximately three weeks prior to the notice of redelivery given by Atkins.

## CONCLUSIONS OF LAW

██ The charter party provided that the cargo was to be loaded at the expense of the charterer, but under the supervision of the Captain. It further provided that the charter party could not be construed as a demise of the vessel to the charterer, and that the owners were to remain responsible for navigation of the vessel, insurance, crew, and other matters, the same as if trading on their own account. The Carriage of Goods by Sea Act, which was incorporated in the "USA Clause Paramount" attached to the charter party, and which is controlling wherein it conflicts with the provisions of the charter party, provides that the carrier shall properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried. So, as spelled out in the charter, the proper stowage of the bananas became the responsibility of the carrier, Horn, and as such makes the vessel responsible for any cargo damage resulting from improper stowage. Mobile, Miami & Gulf S.S. Co. v. Lake Giltedge S.S. Co., 5th Cir., 1934, 68 F.2d 370. Mondella v. S.S. Elie V, D.C.S.D.N.Y.1963, 223 F.Supp. 390.

██ Under a time charter, such as we have in this case, the members of the crew and officers remain the shipowner's men. Bergan v. International Freighting Corp., 2 Cir., 1958, 254 F.2d 231. In the instant case, the bananas were loaded and stowed under the supervision of the officers of the vessel; and they made no objections to the stowage, though they were under a duty to do so if they thought the stowage improper. The Atlanta, D.C.S.D.Ga.1948, 82 F.Supp. 218.

██ The bananas, on both Voyage No. 1 and Voyage No. 4, were in good order and condition when delivered into the custody of the vessel. Upon arrival in Mobile the bananas were extensively damaged, in that a high percentage of them were ripe and turning and of no value to an importer. Under these circumstances the vessel has the burden of proving that due diligence was exercised, or that the damage resulted from some inherent vice, or through no fault of the vessel, as pleaded. Compagnie De Navigation, etc. v. Mondial United Corp., 5th Cir., 1963, 316 F.2d 163; Cooper v. Pinedo, 5th Cir., 1954, 212 F.2d 137.

██ There was no proof of inherent defect, quality or vice of the bananas. The vessel failed to use due diligence to insure the safe carriage of the bananas in that the officers failed to cause the bananas to be stowed properly. The vessel further failed to exercise due diligence in promptly pulling the air temperature down and maintaining the delivery and return air temperature at the desired level.

The Horn vessels were seaworthy. Undoubtedly the vessels are not the best banana carriers to be had, but they are and were capable of safely transporting bananas, providing due diligence is exercised.

██ Without finding specifically that Fruco had a right to rescind the charter party, I find that it did not in fact rescind. The assertions of Atkins that he rescinded the charter party at the end of Voyage No. 1 are unsupported by the evidence. The fact that he did not order the vessel to sail again until the 29th of June does not support such assertion. The vessel remained on charter while tied up at Mobile, and the owners are entitled to charter hire for all this period except for the time the vessel was on dry-dock. The owners are entitled to the $4,327.73 which was withheld from charter hire for this time, less $676.44 for the time when the vessel was on dry-dock. Likewise the owners are entitled to the $1,266.66 withheld from charter hire for the two days standing by, awaiting bananas in Bolivar.

Having found that there was no breach of the owner's undertaking of seaworthiness of carrying bananas, the owner or vessel is entitled to that amount of charter hire which was withheld by Atkins as security for damage to the cargo on Voyage No. 1. The damage to the cargo, for which the vessel was responsible, may be set off against earned charter hire.

Having thus found that the owners of the vessels are entitled to any charter hire remaining unpaid, that the vessels were able to completely mitigate any damages which might have resulted by being placed off charter without proper notice, and that Atkins is entitled to recover the damage to the cargo on Voyage No. 1 and Voyage No. 4, it is found that the parties are entitled to their damages as follows:

ATKINS:

| | |
|---|---|
| Cargo damage Voyage No. 1 | $31,261.64 |
| Cargo damage Voyage No. 4 | 18,495.73 |
| Total | $49,757.37 |

HORN:

| | |
|---|---|
| Charter hire withheld as security for cargo damage on Voyage No. 1 | $25,946.76 |
| Charter hire for time HEINZ HORN was tied up in Mobile after Voyage No. 1 less repair time ($4,327.73 less $676.44) | 3,651.29 |
| Charter hire for two days of stand-by time in Bolivar | 1,266.66 |
| Total | $30,864.71 |

Atkins is further entitled to interest at the rate of 6% per annum from June 22, 1962, on the cargo damage on Voyage No. 1, and from September 12, 1962, on the cargo damage on Voyage No. 4.

Horn is entitled to interest at the rate of 6% per annum from June 22, 1962, on the charter hire withheld as security for cargo damage on Voyage No. 1; from June 29, 1962, for the charter hire withheld for the time the HEINZ HORN was tied up in Mobile; and from July 8, 1962, for the charter hire withheld for stand-by time in Bolivar.

A decree in accordance herewith will issue.