PHILADELPHIA & G. S. S. CO. v. McCAULDIN.

(Circuit Court of Appeals, Third Circuit. February 3, 1913.)

No. 1,685, October Term, 1912.

1. ADMIRALTY (§ 118*)—REVIEW ON APPEAL—FINDINGS OF FACT.

A finding of fact by an admiralty court made on conflicting testimony heard in whole or in part before the judge should have great weight with an appellate court, and should not be disturbed unless clearly wrong.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 758–775, 794; Dec. Dig. § 118.*]

2. SHIPPING (§ 58*)—TIME CHARTER—RIGHT OF CANCELLATION.

Evidence considered, and *held* not to justify a time charterer in canceling the charter, on the ground that the vessel had become defective for service within the meaning of a charter provision giving such right.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 233–244, 314, 327; Dec. Dig. § 58.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. SHIPPING (§ 58*)—CHARTERS—FITNESS OF VESSEL—INSPECTION AS EVIDENCE.

In the absence of any evidence of concealment, latent defect, bias, or fraud, an inspection of a vessel and a finding of fitness for charter service should have persuasive weight.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 233–244, 314, 327; Dec. Dig. § 58.*]

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Chas. B. Witmer, Judge.

Suit in admiralty by Joseph McCauldin, managing owner of the steamship Lassell, against a cargo of lumber, the Philadelphia & Gulf Steamship Company, claimant, and same against the Philadelphia & Gulf Steamship Company in personam. Decrees for libelant, and respondent appeals. Affirmed.

For opinion below, see McCaldin v. Philadelphia & G. S. S. Co., 198 Fed. 328.

Lewis, Adler & Laws, of Philadelphia, Pa., for appellant.
Howard M. Long, of Philadelphia, Pa., for appellee.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

BUFFINGTON, Circuit Judge. The libels in this case concern a dispute over two charter parties, wherein Joseph McCauldin, managing owner of the steamship Lassell, hired that vessel to the Philadelphia & Gulf Steamship Company. The original charter was from June 15, 1909, and its extension on December 28, 1909, was for six months. The charter hire not having been paid in full, McCauldin filed a libel in rem against a cargo of lumber aboard the Lassell to recover $2,375, charter hire from March 28 to April 14, 1910. The defendant admitted the use of the vessel, but made, by cross-libel, a counterclaim for damages for breach of the charter party. On final hearing the court awarded plaintiff the full amount of the charter hire, $2,375, and also allowed defendant a reduction of $746.40 for extra coal consumed by reason of a reduction of allowable steam pressure made by the government inspectors, and $742.69 for expenses of delays caused by the stranding of the vessel at Tinicum Island. From a decree for the balance of $885.91, defendant appealed.

The second libel was in personam against the Philadelphia & Gulf Steamship Company to recover $4,607.98, an alleged balance of charter hire from April 14 to June 12, 1910, after allowing certain credits realized upon recharters. Defense was made to such second libel on the ground of a surrender of the vessel, alleged to be justified by plaintiff's failure to maintain the Lassell as provided by charter, and her failure to proceed with dispatch. The court below did not sustain such defense, and entered a decree in favor of libelant for $3,917.84, being the charter hire in full, $4,607.98, less $690.14 of allowances not here necessary to detail. From a decree for said balance of $3,917.84, defendant appealed.

The substantial controversy between the parties turns on two questions: Was the Lassell maintained up to the charter party requirements, viz., "she being then tight, staunch, strong and every way fitted for the service. That the owners shall maintain her in a thoroughly efficient state in hull and machinery for the service. That the captain shall prosecute his voyage with the utmost dispatch"? Secondly. Was the charterer, by virtue of the provision, "subject to cancellation of the said charter on thirty days' notice, if the ship becomes defective for service," justified in surrendering the vessel?

[1] On the first issue a large mass of conflicting testimony was given by both sides, either before the judge or by deposition. This testimony, as appears by his opinion, was carefully considered, and upon it he has found against the defendant. This finding, as said in The Charles Hebard v. Lyons, 56 Fed. 315, 5 C. C. A. 516, and approved in City of Cleveland v. Chisholm, 90 Fed. 431, 33 C. C. A. 157, and Monongahela Con. Coal & Coke Co. v. Schinnerer (C. C. A.) 196 Fed. 375, "ought to have great weight with an appellate court, hearing the cause upon the record only, and without any additional evidence. The judgment below ought not to be disturbed, excepting upon a clear showing that it was wrong."

[2] The testimony has had our careful re-examination, and we are satisfied its substantial weight justifies the court's findings. Without entering into a discussion in detail of the very numerous phases of the proofs, we may refer to the fact that the vessel had been classified as "A No. 1" by the American Bureau of Shipping, and that the local surveyor of the bureau, in response to a complaint of the defendant, made a reinspection of the Lassell, covering several different days, both with and without steam, and found the complaints unfounded. He so reported to the bureau, and the Lassell's classification was continued to run four years. Moreover, after the defendant gave notice of the intention to cancel, the Lassell was on complaint of defendant inspected by the federal Board of Local Inspectors, who on April 15, 1910, reported, "after having carefully examined vessel's hull, boilers and machinery, we are of opinion she is in a condition to navigate with safety as a steamer, on the route named in her certificate of inspection." The integrity of this inspection is supported by the testimony of the officials who made it.

[3] In the absence of any evidence of concealment, latent defect, bias or fraud, an inspection, like a survey, should have persuasive weight, for, while a survey is not conclusive and in certain cases not a justification, yet, as said in The Amelie, 73 U. S. (6 Wall.) 27, 18 L. Ed. 806, one supported by a survey "is in a condition to furnish the court or jury reviewing the proceedings, strong evidence in justification of his conduct." See, also, The Piskataqua (D. C.) 35 Fed. 622. Nor are we impressed with the contention that the defendant was debarred from thoroughly inspecting the ship. In brief the circumstances were that in pursuance of an agreement between the parties a joint survey was attempted. As its surveyors, defendant sent some eight or ten persons. They were permitted to examine the body of the ship, but, when it came to inspecting the machinery and boil-

ers, plaintiff declined to permit them to do so, claiming that a number of them were not surveyors, but boiler makers sent to secure evidence. At the same time plaintiff, however, agreed that one of the ten, Boyt, who all parties agree was a competent engineer and steamship surveyor, and any person he might select, should be permitted to make the survey below. The testimony of Boyt, which was: "First we went through the 'tween decks and lower holds, and I, in company with the other surveyors, made a very careful examination of all of the framing and beams and bulkheads and beam gussets and 'tween decks, and then we came on up to the deck, and looked around. I tested the seams as far as I could, and the sills of the houses, and around the combing of the hatches, and when we were through with that we went along to the engine room door. Mr. McCauldin stood there with the captain, and Mr. McCauldin said that he could not permit so large a body of surveyors to go down below, and then, of course, I turned around to Mr. Wright to know what we were to do. Mr. McCauldin said that he would be perfectly satisfied for me to go alone, if necessary, to represent both parties, or to go in company with Mr. Wright, or with any other surveyor, but this course was objected to, and the survey was called off"—satisfies us that the plaintiff cannot be justly charged with unreasonably preventing a survey.

Without entering on all the minor questions raised, it suffices to say that on the broad question of the Lassell fulfilling the charter requirements we agree with the conclusion reached by the court below. It follows, therefore, that the cancellation of the charter was not justified.

The decrees below are affirmed.