### THE FERM.

#### LINDERUP v. JACKSON et al.

(Circuit Court of Appeals, Fifth Circuit. November 16, 1920.)

No. 3457.

1. Salvage ⬤⟳51—Finding, supported by sufficient oral evidence, will not be disturbed.

Where there is sufficient oral evidence to warrant a finding awarding salvage for towing a disabled vessel to port, the finding will not be disturbed by the Circuit Court of Appeals.

2. Salvage ⬤⟳34—Salvage award for towing disabled vessel not excessive.

That a vessel was unable to move under her own power, that the flooding of her engines and disabled steering apparatus made her handling peculiarly difficult, etc., *held* to sustain a salvage award of $10,000 for towing to safety a vessel whose value, including her cargo, exceeded $277,000.

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern District of Alabama; Robert T. Ervin, Judge.

Libels by Marshall T. Jackson and others against the steamship Ferm; Rolf W. Linderup, claimant. From a decree for libelants (258 Fed. 716), claimant appeals. Affirmed.

Palmer Pillans, of Mobile, Ala., for appellant.

Gregory L. Smith and Elliott G. Rickarby, both of Mobile, Ala., for appellees.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. The steamship Ferm, laden with yellow pine lumber, above and below deck, left Ship Island, Miss., on October 22, 1915, bound for Norwalk, Conn. On October 23d she began to leak, and during the afternoon of that day the water rose, despite the use of the ship's pumps, so that the fires in the furnaces were put out. This interfered with the operation of the pumps and the steering gear, which were operated by steam. There was one smaller pump operated by hand, and an arrangement for steering without the use of the steam; but this arrangement for hand steerage got out of order, and the wheel was hard over and jammed. There was a heavy sea on, and the Ferm fell into the trough and wallowed. She was at that time about 60 miles from land. She continued wallowing during the 24th, and until the afternoon of the 25th. By this time the weather had moderated.

About 4:30 p. m. of October 25th, a motor schooner, the Louise Pol came alongside and agreed to tow the Ferm. She continued so doing until the afternoon of the 26th, about 1:30 p. m. When the fires went out on the 23d, the Ferm had taken about 3½ feet of water. When the Louise Pol ceased towing on the afternoon of the 26th, she had taken between 7 and 7½ feet of water. When the Louise Pol commenced towing the Ferm, she was about 27 miles offshore in about 26 fathoms of water, and the schooner towed her to a point about 5 miles off Petit Bois Island and 8½ miles off of Horn Island bar in 9 fathoms of water. Here the Ferm anchored; the weather being moderate and the anchorage good.

Before the Louise Pol hailed the Ferm she had spoken a steamer equipped with wireless, and had her send out a message to the United States authorities, asking them to send a tug to her assistance. She also sent out a boat and crew to communicate with the nearest naval station and ask for like assistance. Her cargo was government property for the Shipping Board.

By some means the naval authorities learned of her plight, and on the morning of the 26th, by direction of the officers in charge of the naval patrol boat at Pensacola, the tug Echo, W. C. Clark, captain, came out in search of the Ferm, and sighted her about 4:30 p. m., just as the Louise Pol was leaving her. After some conversation the Echo began towing the Ferm, for the purpose of taking her into Mobile. She towed her with a manilla cable attached to a bridle made of a wire cable belonging to the Ferm. The weather began to get stormy, and about 1:30 a. m. on October 27th a part of the wire

bridle parted, which caused a slackening, and a sudden jerk when the slack was taken up, which broke the manilla tow rope. By that time it had grown quite rough and a heavy sea was on.

By about 20 minutes of skillful seamanship another towline was passed from the tug to the steamer, but in about 20 minutes this second rope parted. The Echo then directed the Ferm to anchor, and after seeing this successfully done, and the anchor holding, the Echo went inside the Mobile bar, lying at the wharf at Ft. Morgan from about 4:30 a. m. Sunday morning, October 27th, to early Monday morning, October 28th. About 6 a. m. of that date the Echo, accompanied by the Claude, a smaller tug, went out to the Ferm and brought her in, delivering her at the wharf at Mobile on Monday evening (28th) about 7 p. m. The services of the Claude were necessary.

The jammed condition of the wheel of the Ferm caused her to sheer to such an extent that the Claude had to take a line over her stern and act as a rudder to the Ferm to keep her in the channel until she came into smooth water inside the bar. Then the Claude lashed to the port side, the Echo being on the starboard side of the Ferm, and brought her to the dock at Mobile. The tugs were owned by the Mobile Towing & Wrecking Company. Libels have been filed by the crews of the Echo and the Claude, and by the owner of said tugs, claiming large sums as salvage, in the United States District Court at Mobile, Ala.

The court has allowed $10,000 as salvage, apportioned 80.43 per cent. to the Ferm, and 19.57 per cent. to the cargo, which, with interest and cost, as stated in the decree of August 26, 1919, was finally adjudged— the sum of $8,310.97 against the Ferm and $2,022.20 against the cargo. The claimant of the cargo has acquiesced in the decree against it, and the appeal is prosecuted alone from the findings against the vessel. The point insisted on is that the allowance made is too large, because the court was in error in finding that the Ferm ran great risk of entire loss, if any considerable delay occurred in relieving her.

[1] The court below, which heard the evidence, found on conflicting testimony that the Ferm was in a dangerous situation, from which she was rescued by the efforts of these tugs; that her machinery was placed in the stern, and that, unless rescued, she in all probability eventually would have sunk by the stern and have capsized. The testimony for the libelants was delivered orally before the court, who saw these witnesses and could better appraise the comparative weight to be given to their testimony as against the testimony of the claimant, which was chiefly in the form of depositions. There was quite sufficient evidence to warrant the finding of the court on this point. In such a condition of the testimony the finding of the District Court will not be disturbed by the Court of Appeals. The Samson, 217 Fed. 344, 347, 133 C. C. A. 260; Philadelphia & Gulf S. S. Co. v. McCauldin 202 Fed. 735, 121 C. C. A. 197; Philadelphia B. & W. R. Co. v. Southern Transportation Co., 205 Fed. 732, 124 C. C. A. 26.

[2] It was quite evident from the testimony, and is not disputed, that the Ferm was wholly unable to move under her own power and

was permanently and completely disabled. She could never have reached a port without being taken in by some other vessel or vessels. The flooding of her engines and the disabled condition of her steering apparatus made her handling peculiarly difficult.

Had she not been taken into port by her salvors, or others rendering like service, she would have been a total loss. The aggregate value of the vessel, her cargo, and freight was $277,268. The owners of the cargo have acquiesced in the decree, and after notice have not joined in the appeal. Under all the facts, this court does not find any such excess in the amount awarded to the owner of the Echo and the Claude, and their crews, against the vessel, as would warrant a reversal of the decree complained of. The Fair Oaks (D. C.) 205 Fed. 192; The Craster Hall, 213 Fed. 436, 130 C. C. A. 72.

The decree of the District Court is affirmed.